This is 5-19-13 and it's the Halsapple v. State of Illinois Human Rights Commission. Good afternoon. Good to see you again. My name is Darrell Dunham. I represent the Helen Brian Hobat Council. May it please the Court. There are two matters that need to be resolved in this appeal. There was a motion to dismiss this appeal for lack of jurisdiction, which the Court has taken under advisement. I'd like to just briefly address that matter. There is an Illinois Supreme Court case in Castellano, and it took me much longer than it should have in my response to make this point, and I'm just quoting from the Castellano case. An agreed party may seek judicial root review of an administrative decision without complying with the on his face. That's not the case here. Where multiple administrative remedies exist and at least one of them is exhausted, where the agency cannot provide an adequate remedy, or where it is patently futile to seek relief before the agency. That's not the case here. But this is the case where no issues of facts are present. That is the case here. The facts are stipulated. And what you have is a naked legal question that is up here for review. And then the second part of Castellano, or agency expertise is not involved. And that's the case here. What we're talking about is a construction of the statute. And the Castellano case is cited in both motions, and I'm citing from 132 Illinois 2nd at 308 and 9. And so what we're dealing with, and of course there's a dispute between the parties as to what is the standard of review, we think it's just flat out straight de novo, because we're not arguing about the facts that are alleged either in the motion to dismiss or the facts that are alleged as with regard to the proper construction of the 180-day rule. And so you have to look at those facts which are agreed to and arrive at a conclusion whether the 180-day statute was properly applied or not. And that's where we're at. I would like to just briefly explain what happened in the underlying case. I think you can take judicial notice of this, but this all started when there were six members of the South SWAT team that filed charges of retaliation and discrimination essentially for hostile work environment. And the rest of the members of the team, although the state was the named party, were essentially on the other side of the case. And that's what the litigation in federal court was about. With regard to two of the plaintiffs, my client in this case, and then Curley, who also was, there wasn't a charge of discrimination on the basis of age. The charge of discrimination was based on retaliation. In essence, the allegation was made, and at least as to three of the plaintiffs in federal court, essentially under the ADA, impunity damages were awarded because of this hostile work environment. Now, those of the five plaintiffs' claimants, this is the only one that hasn't been resolved. The other cases have been settled. And this is the one that's remaining that we were not able to resolve through settlement negotiations. So what we had was, what we contended, and the Department of Human Rights found substantial evidence to support a very hostile work environment where there was retaliation against hose apples, or at least that's what the department was claiming, and we were wanting to have a hearing before the administrative law judge of retaliation because of very difficult hostile work environment. Okay. So here is the underlying facts. I think they're pretty simple with regard to the 180-day statute. We contend that the complaint filed before the commission was timely because the 180 days should start on April 1st, 2012. The respondent contends it should start earlier than that. I think probably if the respondent had to pick a date, as I understand their position, it would be March 15th, 2012. March 15th, 2012 is the date that this court decides is the applicable date, then we lose. If April 1st is the date that this court finds is the applicable date, then we should win. Now, let me explain why I think we should win. Under the underlying facts, my client was not working on the South SWAT team. He insisted on a transfer from the South SWAT team because of hostile work environment, felt like he couldn't work there, didn't feel like it was safe. And so he had a temporary duty assignment with air operations. And what was nice about that for him was that they maintained the same rank and same salary. And then he gets an email from his supervisory officer, Colonel Bruce Banks, basically saying, you've got until the end of the month to decide what you're going to do. You either go back to South SWAT or you go to patrol. Now, patrol was not very attractive to him because it meant a diminution in rank and, more importantly, salary. And also he was going to be going to the midnight shift. And so, of course, he would have liked to have avoided that. But he said in an email coming back, South SWAT is not an option because of the hostile work environment and the split in the team and the difficulties that he worked there. So then we get an email coming back from Bruce Banks, Colonel Banks, saying, OK, I want you, here is an officer action request form. It's called OAR in ISP, Illinois State Police, parlance. OAR, Officer Action Request. Now, I was remiss. If I had thought better, I would have put one of the actual forms in the appendix. I did not. But you can see the very form that was sent to my client on C-237 of the record. Now, what's very interesting about that form is it says Officer Action Request. And I think it's because of the union contract that was in place. There were some issues about commanding officers just unilaterally assigning people. It has to come from Officer Action Request. Obviously, there wasn't any other form that was available. And so what eventually happened was that much later in the month, on March 28th, I believe it was, 2012, the form was signed by everybody but Holzapfel. And there's no showing in the record that Holzapfel ever even saw that form. But so he emails back and basically says, look, I'm a good boy. I'm not going to be insolent. I'm not going to be fired for insubordination. But I don't want to sign this form because I don't agree with it. Now, if you are ordering me to sign the form, I will. And he never got a response to that. And then he further says, look, when am I supposed to go to patrol? I'm not really sure. Didn't we say it was April 1st? And so then he shows up on April 1st to patrol, which was his new assignment. His salary was reduced. His job title was reduced. And he went to midnights. Now, the argument that is raised, there's a case out of Southern Illinois University, Allen v. Lieberman, which I think is factually just totally inapposite. But it's the one that the ALJ cited. It's the one that the respondents are relying on here. In that case, you had a SIU employee. They were taking his job and they were expanding the job title. And they sent out, they were advertising for the job. He was basically going to be replaced. And so he was basically told in December, I believe it was, I'll get my dates wrong, I think it was 2007. It was December before. Look, your job is going to be terminated. You're going to be, your assignment is going to be changed. You're going to be on term appointment. Your last day of work is going to be January 1st of the very following year. He was told that. It wasn't one of these things. What we think the case is about is an employee comes in and says, look, this was a constructive demotion, right? But I think the case law is similar. It says, look, you had an opportunity to resign. You don't resign, you're going to be fired. And the employee says, look, I'm not going to resign. Okay. You're fired. Well, it's at the point you got fired that should, when the statute should start to run, not in the point where you were threatened, you've got this choice of either resigning or being fired. And that's essentially what we think happened here. Well, that's not what we had in the Lieberman case. In that situation, that fellow waited a full year later, inquired at SIU, and said, look, are you guys really not going to renew my appointment here? And they said, no, we're not. And so then he files his charge of indiscriminations of 360 days, essentially 365 later. And so in some of the cases that have been interpreted now in the Lieberman case, because of how these academic appointments lay, they say, well, in the academic sense. I think it's just totally inappropriate. But there's even a more and more important reason for this. Because in their brief, the appellees basically said, the cases that we cite in our brief are not relevant, they're inappropriate, because those are hostile work environment cases. And this is not a hostile work environment case. And in our opening brief, in our reply brief, we cite a number of cases, even a case relied on by the Middle State law judge, that in the hostile work environment, where you've got a series of events, it's the 180 days in the federal cases. There's a United States Supreme Court case at the time the statute was 45 days. But the Illinois courts do look to the federal court interpretation of those statutes in terms of timelines. And they say it's the last event, the last act of discrimination in a pattern of events that continue to go on for a continuum. That's when your statute starts to run, and it relates back to the very first event. That makes sense, because let's say you've got 10 events of discrimination, all part of a pattern, and only the last one or two are within the 180 days. It just makes no sense to say, as a matter of law, that it's not relevant what happened the prior eight or so events that were outside the 180-day period. Now, in this case, so I think maybe March 15th is the date you said, the state said, you know, you report here, or if not, you're going here. And if I'm correct here. That's not correct, Your Honor. Okay. What happened then? You've got until the end of the month to make a choice, going back to patrol or going to patrol or going back to self-define, which is, I think, a huge difference. And it followed up immediately by saying in an email, here is your officer action request form. We want you to sign it, which I think is very similar. If you're looking at facts that are in any way, you know, cases that are similar, it's the resign or get fired line of cases. But that analysis, and I don't, because I think, what we allege in the complaint, there's just ample evidence throughout this record that Hoseapple is alleging hostile work environment. They're trying to characterize this as not a hostile work environment case, but it's got hostile work environment alleged everywhere. And if I'm reading their argument correctly, I think they're saying that if it is a hostile work environment claim, then April 1st, 2012 does become the operative date because that's the last act of discriminatory conduct, which was forcing him to take a reduction in salary and a change in assignment and go to night patrol. And so I don't think there's any dispute under Illinois law and federal law if it's a pattern, hostile work environment, then the last act, the last act, becomes the time where the 180 days begins to run. I don't think there's any dispute that if assuming that we can make our case, that's all we're asking for here, Your Honor. We're asking for the opportunity to go back and prove our case in front of the administrative law judge. But assuming that we can prove our case and it was retaliatory, obviously affecting April 1st, 2012, that's the very date that he suffered a diminution in salary. That's the last discriminatory act. I mean, you're – when I see your eyeball, you know, I bet you'd ask me a question. Don't be fooled by my eyebrows. I'm listening. I've been around Judge Overstreet before, so I'm still – you got me worried, Your Honor. And obviously, if anybody's got questions, what I've learned is I've been doing this long enough. When I get questions, at least I know what the judges are thinking, and so I would love to answer any questions that you've got. So, two reasons. One, Allen case just doesn't apply. That guy was told a year before, look, affecting such and such a date, you're no longer going to have a job here. And we just don't think it applies. But even more importantly, when they – in their brief, they claim this isn't a hostile work environment case. And honestly, they can make that claim. It is. It's a hostile work environment. It's all over the record. So, not seeing anybody asking a question, Your Honor. Thank you. Thank you. Good afternoon, and may it please the Court. Deputy Solicitor General Sarah Hunger on behalf of the State Respondents. Before getting into my prepared remarks, I would like to address something related to the March 15th conversation that Your Honors were just discussing with counsel. Counsel indicated, which would be relevant, that banks had told Holds Apple, you have until the end of the month to decide which of these two options you would like to select. Now, if that were true, that might make it a different case, because it sounds like then, you know, he has until April 1st to decide where he wants to go. But if you look at page A2 of the record and you look at his complaint, it says banks told him that he had, quote, until the close of business to decide if he wanted to go back to SWAT or make a voluntary transfer to parole. He was told on March 15th that he had until the close of business to make this decision, and he told banks in response on that call, this is from deposition testimony of Mr. Holds Apple, so it's sworn deposition testimony in the record, that he was not comfortable going back to SWAT, and so his only choice was to go back to parole. Mr. Holds Apple knew on March 15th that this was his choice. He made his choice, and he communicated it on that same day. He had noticed, for statute of limitations purposes, that the transfer was imminent. Then if you look at the next day, March 16th, banks sends him an officer action request form, which is just a simple human resources form that ISP uses, sends it to him, filling in this transfer, and that it would occur on April 1st, and also that the transfer would result in a pay reduction. So there again, on March 16th, he had additional notice. March 19th, Holds Apple confirms receipt of the officer action request form and says, I'll get this out here, in an email, quote, I will report to District 11 patrol on my assigned date. Of course, the assigned date is April 1st from the officer action request form and from their prior conversation. He also says, I will do as I am told and report to that assignment. On March 22nd, he sent yet another email to banks asking to confirm that April 1st start date. There's absolutely no question here that Holds Apple knew on March 15th, March 16th, March 19th, March 22nd, all well before the 180-day timeline, he had noticed and the decision was made. The ALJ made these factual findings. You know, counsel said that this is a question of law. We're here talking about the facts. You know, the ALJ made these factual findings, and I would also note that Mr. Holds Apple didn't file any written exceptions. That's why this court does not have jurisdiction over this question. You know, it's undisputed that he didn't file these written exceptions, and he doesn't explain why. He says here it's a question of law, but that can't be true because it's based on findings of fact. When did Holds Apple have notice? When did ñ when was the decision made on the part of ISP? These are all factual questions. What about this hostile work environment argument? Well, it was the last day, and the last day would be, you know, April 1st when he reported to the assignment. This is not a hostile work environment case. If you look at both the charge and the complaint, they're retaliation claims. And even if it were a hostile work environment claim, I have two responses to that. The first is that the March 15th conversation is not separate from the April 1st transfer. The question is when did he know about it. These are not separate instances of alleged discrimination or incidents. It's the same incident. The question is when did he know. So I would say that he knew on March 15th. I would also say that if this were a hostile work environment claim at issue, it would certainly be collaterally estopped because Mr. Holds Apple brought a hostile work environment claim in federal court, and he did not prevail. There is now a final judgment, and Mr. Holds Apple did not appeal that to the Seventh Circuit. So while we didn't raise collateral estoppel at the agency level because all of that hadn't been concluded, at this point it's clear counsel has said that all of the other cases have been resolved. Mr. Holds Apple did not appeal. So if this does go back to the agency, we would, of course, argue that this is collaterally estopped. So you can't have it both ways. If it's a hostile work environment claim, well, that claim has already been resolved in favor of the state. If it's not a hostile work environment claim, then March 15th is the date. I mean, I think either way you go kind of down the decision tree here, it results in favor of the state respondents. And it still, of course, doesn't resolve the jurisdictional question of not filing written exceptions, which the law is clear both under the plain language of the statutes. You know, Section 103 of the Human Rights Act says you have 30 days to file written exceptions. There is a rule, 5300.910, which we cite in our brief. If you do not file written exceptions, then you have waived your arguments and you fail to exhaust. And, of course, under the Code of Civil Procedure, if you don't exhaust your administrative remedies, you cannot seek judicial review. And that's with good reason. You know, here we're deciding and discussing factual determinations that the commission has not even had an opportunity to review. This is just a recommended order by the administrative law judge, and it makes good sense to have to go to the commission and seek review there before coming to this Court. If this Court were to hold otherwise, this Court would likely see dozens, if not more, run-of-the-mill statute of limitations questions coming straight from the ALJ going right to this Court without that review process of the commission. I would also note, as representing the state respondents, the commission does want that level of review. If something has happened that it doesn't agree with in the recommended order, it then has the opportunity to correct it before coming here to this Court. So it does benefit everyone to have the rule stay as it has stayed. You know, if you file written exceptions, you can have it reviewed by the Court. If not, unless you're challenging the constitutionality of the statute or one of the other exceptions applies, you have forfeited that review. I would also note that Petitioner's cases that he cites are not to the contrary. He cites the Glassworks case and the Tate case. In Glassworks, the Petitioner did not file written exceptions. And so the Court said, since no objections were filed with the Human Rights Commission, no issue was preserved for review. In the Tate case, the Petitioner did file written exceptions, and so the Court did review the underlying decision. The Petitioner cites this phrase from the Tate case that the Petitioner there did not avail himself of the remedies in front of the commission, but that related to submitting additional evidence with written exceptions. And so the Court said, we're not going to look at that additional evidence because you didn't submit it before the Court. So everything, even the Petitioner cites, is completely consistent with there being no jurisdiction here. As a final point on the jurisdictional question, I would note there's no due process violation. Process was available to Mr. Holzapfel. He could have filed written exceptions with the commission. He simply chose not to. Because process was available, there's no due process violation. Circling back to the statute of limitations question, as I've stated, this is a deferential review to the administrative law judge on all of these factual findings. There's ample evidence in the record supporting this finding that Mr. Holzapfel knew before April 1st that he was going to be transferred. This was not a legal determination, and even if it were, the law is clear from the Allen case. The Allen v. Lieberman case clearly states that the key point in time is when the Petitioner knew about the transfer or whatever adverse employment action and when the decision was made, not when the consequences were felt. That the consequences were felt here on April 1st doesn't change the notice requirement, which is what this court, the appellate court in Allen v. Lieberman, looked to. And again, the hospital work environment is simply not an issue here, and if it were, it would be collaterally stopped. I took a look at the federal court docket last night, just to double-check, and in the second amended complaint in the federal case, the plaintiffs alleged that they were, quote, transferred to road patrol, suffering a decrease in wages, seniority, and benefits. Now, of course, that happened for Mr. Holzapfel on April 1st. So the allegations in the federal case, and that's on page A65 of this record, paragraph 50 of the second amended complaint, would apply here. That is confirmed if you look at the summary judgment papers, document 89-35. These are Holzapfel's interrogatories, and they ask, you know, what were the adverse employment actions and what damages did you seek, et cetera. He specifically mentions the April 1st transfer. That time period was adjudicated in federal court, and Holzapfel did not prevail. If the court has no further questions, we ask that you find them in favor of the state respondent. Thank you. The ISP, in their brief, response brief, they raise a collateral estoppel doctrine. In the reply brief, I explained why it cannot apply, doesn't apply. In order for collateral estoppel to apply, the rendering court would call F1, in this case the federal district court, has to be a court of competent jurisdiction. Now, obviously the federal district court is a court of competent jurisdiction with regard to all kinds of retaliatory claims, ADA claims, and the like. But the law is clear in the state of Illinois that where you've got a matter pending before the commission, it's the commission is the competent, it's got exclusive jurisdiction over those matters. And, in fact, when they raised this argument before the ALJ, who ruled against Holzapfel, he acknowledged just exactly that, that it's the commission that's got, it's got exclusive jurisdiction. And Judge Yandel in the federal district court didn't make any effort at all to dispose of any human rights claims. In fact, in order for collateral estoppel to apply, the issue has got to be the same. Well, how do we know whether Judge Yandel's interpretation or the way she would have applied the law for retaliation under the federal statute is exactly the same issue as it is under the commission? And we don't know. There's been no effort. There's been no effort to make that showing. And the burden of proving collateral estoppel is going to have to be on the respondent in this case. I just don't see how they can argue that this isn't a hostile work environment claim. I would quite agree. Well, counsel, what about this written exception argument? The what? They chose not to file written exceptions, and therefore we don't have jurisdiction. The Castellano case, Your Honor, is the case that they cited. It's a case that I think is good law. I point out in my opening brief and also the reply brief that the doctrine of exhaustion of remedies is not a discretionary argument. It's not a jurisdictional argument. It doesn't have to automatically be applied. And as Castellano itself confirms, this is their case that they cited in their motion. And it doesn't apply where there's no dispute about the facts. Now, she says there is a dispute about it. We're taking the facts as the ALJ found them. We're not disputing any of that. We're agreeing with those facts because the ALJ did a very good job relating exactly what happened. So we're not disputing the facts. And there's nothing about how this statute would be interpreted that requires agency expertise. Every case that's cited by the ISP in this case all involves actual factual determinations getting to the issue of whether there was discrimination or not or whether there was retaliation or not. And if we had done that, if, for example, there had been some kind of factual determination made by the administrative law judge, and then we didn't take exception to that, then I think there's a decent argument. My understanding has always been that when you've got just a naked legal question, not factual issues to be resolved, that the doctrine of exhaustion doesn't have to apply. And that's exactly what we had. I assumed, I think correctly, that the commission, whether they had discretion or not, was going to adopt everything the ALJ decided. Thank you, Your Honor. Thank you. The court may take a short recess.